**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBIN BOONE, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Cause No. |
| vs. | ) ) | Division: |
| PEPSICO, INC.,<br>Serve:  Registered Agent<br>   C T CORPORATION SYSTEM<br>   120 South Central Avenue<br>   Clayton, MO 63105 | ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| and | ) ) | |
| THE QUAKER OATS COMPANY,<br>Serve:  Registered Agent<br>   THE CORPORATION COMPANY<br>   120 South Central Avenue<br>   Clayton, MO 63105 | ) ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiff Robin Boone, on behalf of herself and all others similarly situated,

through her attorneys, and brings this action against Defendants PepsiCo, Inc. and The Quaker

Oats Company (hereinafter referred to as "Defendants" or "Quaker"); and, upon information and

belief, except as to the allegations that pertain to herself, which are based upon personal

knowledge, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on her own behalf and as a representative of a class of

persons similarly situated who purchased Quaker Products for personal, family, or household

purposes.

2.     Defendants develops, manufacturers, markets, distributes, and sells a variety of personal, family, or household products, including:

- Quaker® Chewy Granola Bars Chocolate Chip;
- Quaker® Chewy Granola Bars Peanut Butter Chocolate Chip;
- Quaker® Chewy Granola Bars Oatmeal Raisin;
- Quaker® Chewy Granola Bars Dark Chocolate Chunk;
- Quaker® Chewy Granola Bars Chocolate Brownie-Licious;
- Quaker® Chewy Dipps Granola Bars Peanut Butter;
- Quaker® Chewy Dipps Granola Bars Chocolate Chip;
- Quaker® Chewy Dipps Granola Bars Dark Chocolately;
- Quaker® 25% Less Sugar Chewy Granola Bars Chocolate Chip;
- Quaker® 25% Less Sugar Chewy Granola Bars Cookies and Cream;
- Quaker® 25% Less Sugar Chewy Granola Bars Peanut Butter Chocolate Chip;
- Quaker® Big Chewy® Granola Bars Chocolate Chip;
- Quaker® Big Chewy® Granola Bars Peanut Butter Chocolate Chip

(hereinafter the "Quaker Products" or the "Products").[1]

3.     This action seeks to remedy the unlawful, unfair, deceptive, and misleading business practices of Defendants with respect to the marketing and sale of its food products, which are sold throughout the State of Missouri and the United States.

4.     Defendants market the Products as containing "No Artificial Preservatives."

5.     Defendants falsely, misleadingly, and deceptively states on the labeling and packaging of the Products that they contain "No Artificial Preservatives."  Contrary to these representations, the Products contain the artificial preservative tocopherols.  This labeling deceives consumers into believing that they are receiving healthier Products that are free of artificial preservatives, but Defendants' Products do not live up to these claims.

6.     Conscious of consumers' increased interest in more nutritious products free of artificial additives and willingness to pay more for products perceived to meet this preference,

---

[1] Plaintiff reserves the right to amend this Complaint to include any additional food items sold by Quaker that are within the scope of this Complaint.

Defendants misleadingly, illegally, and deceptively seeks to capitalize on these consumer health trends.

7.      Plaintiff purchased the Products in reliance on Defendants' representations that these Products contain "No Artificial Preservatives."  She would not have purchased the Products had she known that they contain artificial preservatives.

8.      Consumers expect products that are marketed as containing "No Artificial Preservatives" to not contain any artificial, chemical, and/or synthetic preservatives.

9.      Plaintiff and the Class reasonably believed Defendants' false and misleading representations.  Defendants knew or reasonably should have known that its representations regarding the Products were false, deceptive, misleading, and unlawful under Missouri law.

10.     Quaker misrepresented, and/or concealed, suppressed, or omitted material facts in connection with the sale, distribution, and/or advertisement of the Products.

11.     Plaintiff and the Class Members paid a premium for the Products over comparable products that did not purport to contain "No Artificial Preservatives."   Given that Plaintiff and Class Members paid a premium for the Products based on Defendants' representations that they contain "No Artificial Preservatives," Plaintiff and the Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

12.     Plaintiff brings claims against Defendants individually and on behalf the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period") for (1) violation of the Missouri Merchandising Practices Act ("MMPA"), § 407.010 *et. seq.*; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) unjust enrichment; (5) negligent misrepresentation; and (6) fraud.

## PARTIES

13.     At all relevant times, Plaintiff Robin Boone was and is a resident of the State of Missouri.  During the Class Period, Plaintiff has purchased Quaker Products for personal, family, or household use from a Walmart store in St. Louis County.  Plaintiff's purchases include, without limitation, Quaker Chewy Granola Bars, 3 Flavor Variety Pack – Chocolate Chip, Peanut Butter Chocolate Chip, Dark Chocolate Chunk.  Accordingly, Plaintiff has been injured as a result of Defendants' unlawful conduct alleged herein.

14.     Plaintiff purchased the Quaker Products because she saw the labeling, advertising, the Defendants' website, and read the packaging, which represented that the Products contain "No Artificial Preservatives."  Plaintiff relied on Defendants' false, misleading, and deceptive representations that the Products contain "No Artificial Preservatives."   She understood this to mean that he Products that did not contain any artificial, chemical, and/or synthetic preservatives.  Plaintiff would not have purchased the Products at all, or would have been willing to pay a substantially reduced price for the Quaker Products, if she had known that they contained artificial, chemical, and/or synthetic preservatives.  Plaintiff would purchase the Products in the future if Defendants changed the composition of the Products so that they conformed to their "No Artificial Preservatives" packaging and labeling, or if the packages and labels were corrected and she could trust that they were correct.

15.     Defendant PepsiCo, Inc. is a North Carolina corporation whose headquarters is located at 700 Anderson Hill Road, Purchase, NY 10577.  PepsiCo, Inc. is the parent company of Defendant The Quaker Oats Company.  PepsiCo, Inc. conducts business, including advertising, distributing, and/or selling the Quaker Products, throughout Missouri, including the County of St. Louis, Missouri and the United States.

4

16.     Defendant The Quaker Oats Company is a food conglomerate that manufactures, distributes, markets, and sells foods.  It is New Jersey corporation in good standing in the State of Missouri, with its principal place of business and corporate headquarters located at 433 W. Van Buren Street, Suite 3N, Chicago, Illinois, 60607.  The Quaker Oats Company is a subsidiary of Defendants PepsiCo, Inc.  Defendant The Quaker Oats Company conducts business, including advertising, distributing, and selling the Quaker Products, throughout Missouri, including the County of St. Louis, Missouri and the United States.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

18.     This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in Missouri or otherwise intentionally did avail themselves of the markets within Missouri, through their sale of the Product in Missouri and to Missouri consumers.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendants regularly conduct business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### Defendants' False and Misleading Representations

20.     Defendants have misrepresented that the Quaker Products contain "No Artificial Preservatives" throughout the Class Period.

21.     Defendants' marketing materials are replete with statements that the Products contain "No Artificial Preservatives."

22.     Quaker's website contains numerous statements claiming that the Products contain "no artificial preservatives."

23.     The packaging for the Products misrepresents that the Products contain "No Artificial Preservatives."  Quaker makes this claim on the packaging of all the Products:



24.     The packaging for the Products claims that they contain "No Artificial Preservatives."   However, each of these representations is false and misleading.  Consumers understand the terms "No Artificial Preservatives" to mean exactly what Defendants says they mean – that the Products are do not contain any artificial, chemical, and/or synthetic preservatives.  Under this definition, and the expectations of reasonable consumers, the Products cannot be considered as containing "No Artificial Preservatives" because they contain artificial, chemical, and/or synthetic preservatives.

25.     Representing that a product contains "No Artificial Preservatives" is a statement of fact.

26.     Consumers reasonably believe that a product labeled as containing "No Artificial Preservatives" does not contain artificial, chemical, and/or synthetic preservatives.

**Defendants' Products Contains Artificial Preservatives**

27.     Defendants' claims that the Products contain "No Artificial Preservatives" is false and misleading.  The Products contain tocopherols, whose functions as an artificial, chemical, and/or synthetic preservative has been well-documented.  This ingredient functions as a preservative in the Products.  Defendants admits as much.

28.     The Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  21 C.F.R. § 101.22(a)(5).

29.     The tocopherols have precisely this effect.

7

30.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[2]  The scientific evidence and FDA statements cited below establish that tocopherols both tend to prevent or retard the deterioration of food.  This remains the case regardless of the subjective purpose for which this substance is added to the Products.

31.     Defendants admits on the labels of the Products that the tocopherols are an ingredient used "to preserve freshness" in the Products.

---

[2] https://www.macmillandictionary.com/us/dictionary/american/tend



32.     Tocopherols do not fall into any of the regulatory exemptions from the definition

of a preservative.

33.     The FDA expressly classifies tocopherols as preservatives in its Overview of

Food Ingredients, Additives, and Colors, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetable | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, **tocopherols** (Vitamin E) |

https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

34.     Tocopherols are also listed on the FDA's regulatory listing of chemical preservatives. *See* 21 CFR § 182.3890 (Subpart D).

35.     The FDA's Warning Letter to Wonder Natural Food Corp. dated July 13, 2015 further confirms that tocopherols are preservatives:

> We note that the label bears the claim "No Preservatives."  We note that if any ingredients such as tocopherol or sodium ascorbate are being used as preservatives, this statement would be false and cause the product to be misbranded under 403(a)(l).

 *See* Exhibit A, Warning Letter dated July 13, 2015.

36.     Tocopherols do as a matter of fact function as artificial preservatives in the Products.

37.     Given the presence of tocopherols in the Products, Defendants' representations that they contain "No Artificial Preservatives" are false, deceptive, and misleading.

38.     Defendants' use of the terms "No Artificial Preservatives" are misleading to a reasonable consumer because the reasonable consumer believes that the terms "No Artificial Preservatives," when used to describe a good such as the Products, means that the Products' do not contain any ingredients that are artificial, chemical, and/or synthetic preservatives.

39.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains artificial preservatives, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

40.     Discovering that the ingredient tocopherols is an artificial preservative requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the tocopherols ingredient is identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that the ingredient is an artificial preservative.

41.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent claims, representations, and warranties that the Products contain "No Artificial Preservatives."

42.     Defendants does not disclose that the tocopherols ingredient is an artificial preservative.   A reasonable consumer understands Defendants' "No Artificial Preservatives" claims to mean that the Products contain no artificial, chemical, and/or synthetic preservatives.

43.     Defendants' representations are further false, misleading, and deceptive because they do not represent that all of their Quaker Chewy Granola Bars with the preservative ingredient tocopherols contain "No Artificial Preservatives."  The packaging of certain flavors of Quaker Chewy Granola Bars that are not included in Plaintiff's claims include the ingredient tocopherols yet do not misrepresent that they contain "No Artificial Preservatives."  For example:



44.    And Defendants admit on the labels of their Quaker Chewy Granola Bars

S'Mores that the tocopherols are an ingredient used "to preserve freshness" in the product.



45.     Thus, Defendants do not misrepresent that all of their Quaker Chewy Granola Bars with the preservative ingredient tocopherols contain "No Artificial Preservatives."

46.     Given that Defendants label the Quaker Products as containing "No Artificial Preservatives" with the preservative tocopherols while not making the exact same representation on other Quaker Chewy Granola Bar flavors confirms that the tocopherols ingredient in the

13

Products at issue are artificial, chemical, and/or synthetic preservatives.  And it further confirms that Defendants' representations that the Quaker Products contain "No Artificial Preservatives" are false, deceptive, and misleading.

47.     Defendant is thus aware that the tocopherols in its Products are artificial, chemical, and/or synthetic preservatives but chooses to misrepresent as much on the packaging of the Products.

48.     Defendants' representations that the Products contain "No Artificial Preservatives" induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products.  Plaintiff and Class Members relied on Defendants' false and misleading misrepresentations in purchasing the Products at some premium price above comparable alternatives that are not represented as containing "No Artificial Preservatives."  If not for Defendants' misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price.  Accordingly, they have suffered an injury as a result of Defendants' misrepresentations.

49.     Defendants knew that consumers will pay more for a product labeled containing "No Artificial Preservatives" and intended to deceive Plaintiff and putative class members by labeling the Quaker Products as purportedly products with no artificial, chemical, and/or synthetic preservatives.

50.     Defendants have profited enormously from its false and misleading representations that the Quaker Products contain "No Artificial Preservatives."  The purpose of this action is to require Quaker to undertake a corrective advertising campaign and to provide consumers with monetary relief for Quaker's deceptive and misleading product claims.

**Plaintiff's Claims Are Consistent with Federal Law**

51.     Defendants' deceptive misrepresentations violated the Federal Food, Drug, and Cosmetic Act ("FDCA"), which provides that "[a] food shall be deemed misbranded.  If its labeling is false or misleading in any particular."  21 U.S.C. § 343 (a)(1).

52.     Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is consistent with that of the FDA (see above).  Moreover, FDA regulations specifically note that claims like "No Artificial Preservatives" are non-nutritive claims that are not governed by 21 C.F.R. § 101.13.  *See* 21 C.F.R. § 101.65(b)(2).  Since the FDA has not issued specific standards governing when "No Artificial Preservatives" claims are either true or false, such representations fall outside the ambit of FDA regulations.  Accordingly, Plaintiff's claim cannot be preempted.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

54.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of the following classes:

      a.   Missouri Subclass:  All Missouri residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household use;

      b.   Nationwide Class:  All persons in the United States, who within the relevant statute of limitations periods, purchased the Products (collectively, the "Classes" and "Class Members").

55.     Excluded from the Classes:

15

    i.    Defendants, any entity in which a Defendants has a controlling interest or which has a controlling interest in a Defendants, and Defendants' legal representatives, predecessors, successors, assigns, and employees;

    ii.    Counsel and members of the immediate family of counsel for Plaintiff herein; and

    iii.    The judge and staff to whom this case was assigned, and any member of the judge's immediate family;

    iv.    Individuals asserting claims for personal injury; and

    v.    Persons or entities that purchase the Products for sole purposes of resale.

56.    Plaintiffs reserve the right to revise the class definitions with greater specificity or division after having an opportunity to conduct discovery.

57.    Plaintiff is a member of all proposed Classes.

58.    The proposed Classes meet all requirements for class certification.  The members of the Classes satisfy the numerosity standards.  Plaintiff has a good faith belief that there are tens of thousands of Class Members.  Defendants have sold millions of units of the Products.  As a result, joinder of all Class Members in a single action is impracticable.  Class Members may be informed of the pendency of this Class Action by published and broadcast notice.

59.    Plaintiff's claims are typical of the other Class Members.  Plaintiff and Class Members purchased the Quaker Products in connection with Defendants' false, misleading, and deceptive statements.  Plaintiff and Class Members have all sustained damages in that each paid the purchase price for the Products.

60.    Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the members of the Classes she seeks to represent.  The interests of Class Members will be fairly and adequately protected by

Plaintiff and their undersigned counsel, who have extensive experience prosecuting complex class action litigation.

61.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Common questions of law and/or fact exist as to all Class Members, which predominate over any questions affecting solely individual Class Members.  The questions of law and fact common to the Classes arising from Quaker's actions include, without limitation, the following:

    a.  Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

    b.  Whether Defendants' conduct was unfair and/or deceptive;

    c.  Whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the classes;

    d.  Whether Defendants breach warranties to Plaintiff and the Classes;

    e.  Whether Plaintiffs and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages; and

    f.  Whether injunctive, declaratory, and/or other equitable relief is warranted.

62.     These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual members of the Classes.  The resolution of common questions in this case will resolve the claims of both Plaintiff and the Classes.

63.     A class action is superior, with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual Class Members would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and/or fact common to the Class.  In addition, the prosecution of separate actions by individual Class Members would establish incompatible standards of conduct for any party opposing the Classes.  Also, the prosecution of separate actions by individual Class Members, if fully adjudicated, as a practical matter, would be dispositive of the interests of the other Class Members not parties to that particular adjudication and, as such, would substantially impair or impede upon those Class Members abilities to protect their interests.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

64.     The interest of Class Members in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Classes have a high degree of cohesion, and prosecution of the action through a representative would be unobjectionable.  The amounts at stake for Class Members, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against Defendants.  Plaintiff does not anticipate any difficulty in the management of this action as a class action.

**COUNT I**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Deception, 15 CSR 60-9.020**
**(As to the Missouri Subclass Only)**

65.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

66.     The acts and practices engaged in by Defendants, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq*.

67.     Defendants' actions alleged herein violated, and continue to violate, the MMPA.

68.     Defendants are a "person" within the meaning of the MMPA, at Missouri Revised Statutes § 407.010(5).

69.     The goods purchased from Defendants are "merchandise" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(4).

70.     The transactions resulting in purchases of goods from Defendants in Missouri are a "sale" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(6).

71.     Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the Royal Canin Products in violation of Mo. Rev. Stat. § 407.020, which states in relevant part as follows:

> 407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice. ... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

72.     Plaintiff and Class Members purchased the Quaker Products, products that were falsely and deceptively represented as containing "No Artificial Preservatives," as stated above, in violation of the Missouri Merchandising Practices Act and as a result Plaintiff suffered economic damages, in that the product she and other Class Members purchased was worth less than the product they thought they had purchased had Defendants' representations been true.

73.     Defendants' misrepresentations regarding the Quaker Products are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Class.

74.     Plaintiff and Class Members purchased the Quaker Products for personal, family, or household purposes.

75.     Plaintiff and Class Members reasonably and justifiably relied on Defendants' misleading and fraudulent representations about the Quaker Products when purchasing them.

76.     At all times relevant herein, Plaintiff was unaware that the Quaker Products contained artificial preservatives.

77.     Defendants' marketing materials for the Quaker Products do not disclose that the Products contained artificial preservatives.

78.     Defendants' website does not disclose that the Products contained artificial preservatives.

79.     Defendants' labeling for the Quaker Products does not disclose that the Products contain artificial preservatives.

80.     Defendants' packaging for the Quaker Products does not disclose that the Products contain artificial preservatives.

81.     Defendants' representations that the Quaker Products contain "No Artificial Preservatives" was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

82.     The foregoing acts and practices of Defendants constituted unfair and unlawful practices, and deceptive conduct, in violation of the Missouri Merchandising Practices Act.

83.     As a direct proximate result of the above-described practices, Plaintiff and Class Members suffered ascertainable loss of money due to the purchasing of the Quaker Products.

84.     Plaintiff and Class Members have suffered an ascertainable loss caused by Defendants because they would not have purchased the Quaker Products or would have paid significantly less for the Products, had they known that Defendants' conduct was misleading and fraudulent.

85.     Appropriate injunctive relief is necessary to prevent Defendants' MMPA violations from continuing.  If Defendants' violations of the MMPA are not stopped by such injunctive relief, Plaintiff and the members of the Class will continue to suffer injury.

86.     Defendants' misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

87.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and the Missouri Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including not received the benefit of their bargain in purchasing the Products.

88.     Plaintiff and other members of the Missouri Subclass lost money or property as a result of Defendants' violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with artificial preservatives (b) they paid a substantial price premium compared to other food products due to Defendants' misrepresentations and deceptions; and (c) the Products do not have the characteristics, uses, or benefits as promised.

89.     Plaintiff and the Missouri Subclass seek all monetary and non-monetary relief allowed by law, including treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

90.     WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

### COUNT II
### Violation of Missouri's Merchandising Practices Act ("MMPA")
### Misrepresentation, 15 CSR 60-9.070
### (As to the Missouri Subclass Only)

91.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

92.     Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

93.     "A misrepresentation is an assertion that is not in accord with the facts."  15 CSR 60-9.070.

94.     As described further herein, the presence or lack of artificial preservatives in a product is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

95.     Defendants' representations that the Products contain "No Artificial Preservatives" – when the Products contained the artificial preservative tocopherols - is a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material misrepresentation.

96.     Defendants' representations that the Products contained "No Artificial Preservatives" is a material misrepresentation.

97.     Defendants' misrepresentations were material because they were likely to deceive reasonable consumers.

98.     Plaintiff purchased the Products for personal, family, or household purposes.

99.     Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

100.    WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT III**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Concealment or Omission of any Material Fact, 15 CSR 60-9.110**
**(As to the Missouri Subclass Only)**

101.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

102.    Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

103.    The MMPA prohibits as an unlawful practice the act, use or employment of the "concealment, suppression or omission of any material fact" in connection with the sale or advertisement of any merchandise in trade or commerce.  §407.020.1, RSMo.

104.    A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."  15 CSR 60-9.010(1)(C).

105.    "Concealment of a material fact" is defined as "any method, act, use or practice which operates to hide or keep material facts from consumers."  15 CSR 60-9.110(1).

106.    "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."  15 CSR 60-9.110(3).

107.    Defendants' actions as alleged herein constitute the concealment and omission of material facts.

108.    Among other things, Defendants concealed and omitted the material facts that the Products contain artificial preservatives.

109.    As described further herein, the representation that a product contains "No Artificial Preservatives" is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

110.    Defendants' labeling and packaging for the Products does not disclose that the Products contain artificial preservatives.

111.    Defendants' labeling and packaging for the Products does not disclose which, if any, ingredients are artificial preservatives.

112.    As described further herein, the presence or lack of artificial preservatives in a product is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

113.    Defendants' failure to disclose the fact that the Products contain artificial preservatives was a violation of the Missouri Merchandising Practice Act, and was a material omission.

114.    Plaintiff purchased the Products for personal, family, or household purposes.

24

115.    Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. In addition, the Products are legally worthless.

116.    WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT IV**
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**Half-Truths, 15 CSR 60-9.090**
**(As to the Missouri Subclass Only)**

117.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

118.    Plaintiff brings this Count individually and on behalf of the members of the Missouri Subclass.

119.    A half-truth misrepresentation as defined in the MMPA occurs when "any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading."  15 CSR 60-9.090.

120.    A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."  15 CSR 60-9.010(1)(C).

121.    "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 CSR 60-9.110(3).

122.    Defendants' actions as alleged herein constitute the concealment and omission of material facts.

123.    Among other things, Defendants concealed and omitted the material facts that the Products were contain artificial preservatives.

124.    As described further herein, the representation that a product contains "No Artificial Preservatives" is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

125.    Defendants' labeling for the Products does not disclose that the Products contain artificial preservatives.

126.    Defendants' labeling for the Products does not disclose which, if any, ingredients are artificial preservatives.

127.    As described further herein, the presence or lack of artificial preservatives in a product is a fact which may "induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner."

128.    Defendants' failure to disclose certain the presence of the artificial preservatives, such as tocopherols, was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

129.    Defendants' failure to disclose the fact that the Products contain artificial preservatives was a violation of the Missouri Merchandising Practice Act, and was a material omission.

130.    Plaintiff purchased the Products for personal, family, or household purposes.

131.    Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. In addition, the Products are legally worthless.

132.    WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT V**
**Breach of Express Warranty**
**(As to the Classes)**

133.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

134.    Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

135.    Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted and represented that the Products contain "No Artificial Preservatives."

136.    Defendants provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products contain no artificial preservatives.

137.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

138.    Defendants' express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products, became part of the basis of the bargain between Defendants and Plaintiff and the Classes, thereby creating an express warranty that the

Products would conform to those affirmations of fact, representations, promises, and descriptions.

139.    The Products do not conform to the express warranty because they contain artificial preservatives.

140.    Defendants was provided notice of these issues by numerous public complaints and inquiries concerning its use of artificial preservatives in its products.

141.    Additionally, prior to the filing of this Complaint, Plaintiff timely notified Defendants of these breaches by letters sent via United States Postal Service Priority Mail on September 14, 2021.  The letters were received by Defendants on September 16, 2021 and September 20, 2021.

142.    Defendants have had a reasonable opportunity to cure its breach of written warranties and any additional opportunity to cure would be unnecessary and futile.

143.    As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and members of the Classes have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' artificial preservatives; (b) they paid a substantial price premium based on Defendants' express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

144.    WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT V
## Breach of Implied Warranty of Merchantability
### (As to the Classes)

145.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

146.     Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

147.     Defendants are a merchant with respect to the sale of foods including the Quaker Products.  the designer, manufacturer, marketer, distributor, and/or seller of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to Plaintiff and other consumers.

148.     In representing on the Products that the Products contain "No Artificial Preservatives," Defendants have provided a promise or affirmation of fact to Plaintiff and other consumers.

149.     However, the Products dos not conform to the promises or affirmations of fact, as the Products do contain artificial, chemical, and/or synthetic preservatives.

150.     Therefore, Defendants have breached its implied warranty of merchantability in regard to the Products.

151.     If the Plaintiff and members of the Classes had known that the Products do not conform to Defendants' promises or affirmations of fact, they would not have purchased the Product or would not have been willing to pay the premium price associated with Product. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

**COUNT VI**
**Unjust Enrichment**
**(As to the Classes)**

152.     Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

153.    Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

154.    At all times relevant hereto, Defendants deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

155.    Plaintiff and members of the Classes conferred upon Defendants nongratuitous payments for the Products that they would not have if not for Defendants' deceptive advertising and marketing.  Defendants accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

156.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

157.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

### COUNT VI
### Negligent Misrepresentation
### (As to the Classes)

158.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

159.     Plaintiff brings this Count individually and on behalf of the members of the proposed Classes against the Defendants.

160.     Defendants have marketed the Quaker Products in a manner indicating that the Products contain "No Artificial Preservatives."  However, the Products do contain the artificial preservative tocopherols.  Therefore, Defendants have made misrepresentations as to the Products.

161.     Defendants' representations regarding the Products are material to a reasonable consumer because they relate to the composition of the Products purchased by consumers.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

162.     At all relevant times when such misrepresentations were made, Defendants knew or have been negligent in not knowing that the representations were false and misleading. Defendants had no reasonable grounds for believing its representations were not false and misleading.

163.     Defendants intends that Plaintiff and other consumers rely on the representations made about the Products, as the representations are made prominently on the Products, and are reinforced throughout Defendants' marketing and advertising campaigns.

164.     Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased it at the prices at which they were offered.

165.     Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and

other general and specific damages, including but not limited to the amounts paid for the

Products, and any interest that would have accrued on those monies, all in an amount to be

proven at trial.

**COUNT VII**
**Fraud**
**(As to the Classes)**

166.    Plaintiff hereby incorporates and re-alleges, as though fully set forth herein, each

and every allegation set forth in the preceding paragraphs of this Complaint.

167.    Plaintiff brings this Count individually and on behalf of the members of the

proposed Classes against the Defendants.

168.    As discussed above, Defendants have willfully, falsely, and knowingly provided

Plaintiff and Class members with false or misleading material information about the Products

and failed to disclose material facts about the Products, including but not limited to the fact that

the Products contain the artificial preservative tocopherols.   Despite this, Defendants continues

to intentionally represent that the Products contain "No Artificial Preservatives."  Therefore,

Defendants have made, and continue to make, misrepresentations as to the Products.

169.    The misrepresentations and omissions made by Defendants, upon which Plaintiff

and Class members reasonably and justifiably relied, were intended to induce and actually

induced Plaintiffs and Class members to purchase the Products.

170.    Defendants' misrepresentations are material (i.e., the type of misrepresentations to

which a reasonable person would attach importance and would be induced to act thereon in

making purchase decisions), because they relate to the composition of the Products.

171.    Defendants knew or recklessly disregarded the fact that the Products contain

artificial preservatives.

172.    Defendants intend that consumers rely on these representations, as the representations are made prominently on the Product, and are reinforced throughout Defendants' marketing and advertising campaign.

173.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased it at the prices at which it was offered.

174.    Therefore, as a direct and proximate result of Defendants' fraudulent actions, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

175.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.    For an order certifying the nationwide Class and the Missouri Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and Missouri Subclass representative; and naming Plaintiff's attorneys as Class Counsel to represent the Class and Missouri Subclass members;

b.    For an order declaring the Defendants' conduct violates the statutes and laws referenced herein;

c.    For an order finding in favor of Plaintiff, the nationwide Class, and the Missouri Subclass on all counts asserted herein;

d.    For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

e.     For an order requiring Defendants to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendants from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and order Defendants to engage in corrective action;

f.     For an order requiring Defendants to undertake a corrective advertising campaign;

g.     For prejudgment and postjudgment interest on all amounts awarded;

h.     For injunctive relief as pleaded or as the Court may deem proper; and

i.     For an order awarding Plaintiff and the Class and Missouri Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY DEMAND**

176.     Plaintiff demands a trial by jury on all issues so triable.

Dated:   1/27/2022

Respectfully submitted,

ORLOWSKY LAW, LLC

/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #57387
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiff

GOFFSTEIN LAW, LLC

/s/ Adam M. Goffstein
Adam M. Goffstein, #45611
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiff