UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBIN BOONE,                          )
                                      )
        Plaintiff,                    )
                                      )
    vs.                               )        Case No. 4:22-cv-00108-AGF
                                      )
PEPSICO, INC., et al.,                )
                                      )
        Defendants.                   )


**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Robin Boone filed this putative class action seeking damages and injunctive relief on behalf of persons who purchased various versions of Defendants' granola bars.  Plaintiff alleges that the granola bars contain false or misleading labels and asserts claims of deception, misrepresentation, concealment or omission of any material fact, and half-truths under the Missouri's Merchandising Practices Act ("MMPA") §407.010, *et seq.* (Count I-IV); breach of express warranty (Count V); breach of implied warranty of merchantability (Count VI) [1]; unjust enrichment (Count VII); negligent misrepresentation (Count VIII); and fraud (Count IX).

---

[1]      Plaintiff's complaint has erroneously labeled the sixth cause of action, breach of implied warranty of merchantability, as "Count V", and the remaining causes of action are likewise mislabeled. This order has adopted the correct numbering.

The matter is now before the Court on Defendants' motion to dismiss the complaint for failure to state a claim and lack of standing.  (Doc. No. 12).  For the reasons stated below, the Court will grant the motion in part and deny the motion in part.

## BACKGROUND

The following facts are taken from the complaint.  (Doc. No. 1).  The Court also considers "[d]ocuments necessarily embraced by the pleadings," meaning "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (holding that such documents may be considered on a 12(b)(6) motion); *see also Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (holding the same as to "documents incorporated into the complaint by reference").

Defendants PepsiCo, Inc. ("PepsiCo") and The Quaker Oats Company, Inc. ("Quaker") develop, manufacture, market, distribute and sell the following granola bar products: Quaker® Chewy Granola Bars Chocolate Chip; Quaker® Chewy Granola Bars Peanut Butter Chocolate Chip; Quaker® Chewy Granola Bars Oatmeal Raisin; Quaker® Chewy Granola Bars Dark Chocolate Chunk; Quaker® Chewy Granola Bars Chocolate Brownie-Licious; Quaker® Chewy Dipps Granola Bars Peanut Butter; Quaker® Chewy Dipps Granola Bars Chocolate Chip; Quaker® Chewy Dipps Granola Bars Dark Chocolatey; Quaker® 25% Less Sugar Chewy Granola Bars Chocolate Chip; Quaker® 25% Less Sugar Chewy Granola Bars Cookies and Cream; Quaker® 25% Less Sugar Chewy Granola Bars Peanut Butter Chocolate Chip; Quaker® Big Chewy® Granola Bars

Chocolate Chip; and Quaker® Big Chewy® Granola Bars Peanut Butter Chocolate Chip. ("Products").  (Doc. No. 1, Compl. at ¶ 2.)

The Products are marketed as containing "No Artificial Preservatives" and their labels and packaging contain the language "No Artificial Preservatives."  (*Id.* at ¶ 4-5).  Further, Quaker's website contains numerous statements claiming that the Products contain "no artificial preservatives."  (*Id.* at ¶ 22.)

Plaintiff alleges that these representations are false, specifically, Plaintiff alleges that the Products contain artificial preservatives known as "tocopherols."  (*Id.* at ¶ 5, XX).  Tocopherols are a listed ingredient on the Products; specifically, they are listed as "tocopherols (to preserve freshness)."  (*Id.* at ¶ 31.)

In support of her allegation that the tocopherols are an artificial preservative, Plaintiff cites to the Food and Drug Administration (FDA's) definition of chemical preservatives, which states that "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  21 C.F.R. § 101.22(a)(5).  (*Id.* at ¶ 28).  Plaintiff claims that tocopherols have precisely this effect.  (*Id.* at ¶ 29).  Plaintiff also cites to the Overview of Food Ingredients, Additives, and Colors on the FDA Website which classifies tocopherols as preservatives, the FDA's regulatory listing of chemical preservatives, and the FDA's warning letter to Wonder Natural Food Corp., dated July 13, 2014.  (*Id.* at ¶¶ 33-35.)

The FDA's warning letter states: "We note that the label bears the claim 'No Preservatives.'  We note that if any ingredient such as tocopherol or sodium ascorbate are being used as preservatives, this statement would be false and causes the product to be misbranded under 403(a)(1)."  (*Id.* at ¶ 35).

In sum, Plaintiff argues that given the presence of tocopherols in the Products, Defendants' representations that they contain "No Artificial Preservatives" are false, deceptive, and misleading.  (*Id.* at ¶ 37).

Plaintiff purchased Quaker Chewy Granola Bars, 3 Flavor Variety Pack – Chocolate Chip, Peanut Butter Chocolate Chip, Dark Chocolate Chunk for household use at a Walmart in St. Louis County.  (*Id*. at ¶ 13).

## ARGUMENT OF THE PARTIES

### Defendants' Arguments in Support

Defendants' main contention is that the Complaint lacks any factual allegations to support the assertion that the preservatives in the Products are, in fact, artificial. Defendants explain that tocopherols exist in both artificial and non-artificial forms, and the complaint alleges no facts in support of the allegation that the Products contain the artificial, as opposed to the non-artificial, tocopherols.

Defendants argue that the claims should be dismissed on numerous grounds, including failure to state a claim under Rule 12(b)(6); lack of Article III standing; and failure to allege PepsiCo is a proper defendant.

Failure to State a Claim

Defendants argue that Plaintiff fails to state a claim for any of the causes of actions in the complaint, including violations of MMPA §§407.010, *et seq*., breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, negligent misrepresentation, and fraud.  Specifically, Defendants argue that Plaintiff has not sufficiently alleged any false or misleading labeling under Rules 8 and 9(c) of the Federal Rules of Civil Procedure because she pleads no facts supporting her contention that the Products contain artificial preservatives, and therefore pleads no facts supporting her contention that the products are deceptively labeled.

With respect to the allegations of false or misleading marketing/advertising outside of the Product labels, Defendants argue that Plaintiff fails to satisfy Rule 9(b) because she didn't plead the circumstances underlying the alleged fraud with particularity.  Defendants further argue that Plaintiff fails to state a claim under the MMPA for her omission-based claims because she has not pleaded that Defendants acted with scienter.  Defendants also assert that Plaintiff fails to state a claim for breach of the implied warranty of merchantability because she has not alleged that Defendants' products were not fit for the ordinary purposes for which such goods are used.

Standing

Next, Defendants argue that Plaintiff lacks standing to bring any of her claims because she has not alleged that she suffered a concrete, cognizable injury, and Plaintiff also lacks standing to bring claims regarding Products she did not purchase.

With respect to the first standing argument, Defendants assert that while Plaintiff claims she was injured because she "paid a premium for the Products over comparable products that did not purport to contain 'No Artificial Preservatives,'" she pleads no facts to support her price premium theory.  (Compl. at ¶ 11).  In fact, Defendants contend that Plaintiff's complaint actually refutes her own theory because Quaker assigns the same price to the Chewy Granola Bars S'mores containing (non-artificial) tocopherols variety labeled "No Artificial Preservatives" as they do to the Chewy Granola Bars S'mores variety that contains (artificial) tocopherols, but which does not carry the challenged label statement.  Defendants also argue that Plaintiff's contention that she would not have purchased the Products had she known they contain an artificial ingredient does not sufficiently allege an injury or pecuniary loss.

Next, Defendants argue that in the event Plaintiff's claims are not dismissed in full for the reasons set forth above, they must be limited to the single Product Plaintiff alleges she purchased: Quaker Chewy Granola Bars, 3 Flavor Variety Pack – Chocolate Chip, Peanut Butter Chocolate Chip, Dark Chocolate Chunk.

<u>Improper Defendant</u>

Lastly, Defendants argue that Plaintiff fails to allege that PepsiCo is a proper defendant.  Defendants contend that PepsiCo is referenced in only a single paragraph of the Complaint, which does not allege any wrongdoing by PepsiCo, nor are there any indirect claims against PepsiCo.  Additionally, the mere fact that PepsiCo is Quaker's parent company does not make it liable for any alleged mislabeling.

**<u>Plaintiff's Arguments in Opposition</u>**

In opposition, Plaintiff contends that Defendants' assertions are flatly contradicted by the allegations in the complaint.

<u>Failure to State a Claim</u>

Plaintiff asserts that she has expressly pled facts to support her contention that the tocopherol ingredient in the Products is an artificial and chemical preservative, including citations to federal regulations that expressly name and define tocopherols as an artificial and chemical preservative.  Plaintiff argues that she need only plead "enough facts to state a claim to relief that is plausible on its face," which she has done here. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiff also argues, that in any event, in a motion to dismiss, the Court should accept all material facts as true, and whether the tocopherols in the Products are artificial and chemical preservatives is a question of fact which Plaintiff alleges is true.

Plaintiff further argues that her allegations regarding the fraudulent claims on Defendants' website and marketing statements address the "who," "what," "where," "when," and "how" of the alleged misleading information, therefore satisfying the particularity requirement of Rule 9(b).

Next, Plaintiff contends that her omission-based MMPA claim satisfies the scienter requirement because her complaint expressly alleges, with particularity, the facts supporting a plausible inference that Quaker was aware the Products contain artificial tocopherols yet failed to disclose that information.

Plaintiff also contends that she has properly stated a claim for breach of implied warranty. Plaintiff explains that contrary to Defendants' assertion, Plaintiff's implied warranty claim is predicated on Mo. Rev. Stat. § 400.2-314(2)(f), not Mo. Rev. Stat. § 400.2-314(2). Section 400.314-(2)(f) states that merchantable goods must "conform to the promises or affirmations of fact made on the container or label if any," and under this statute, Plaintiff need not allege or show that the Product is not "fit for the ordinary purpose" for which it is used.

Standing

Plaintiff argues that Defendants' standing arguments completely ignore the benefit of the bargain rule applied by Missouri courts in these types of cases. Plaintiff, citing *Kelly v. Cape Cod Potato Chip Co.* 81 F. Supp. 3d 754, 758 (W.D. Mo. 2015), asserts that the benefit of the bargain rule allows a purchaser "to be awarded the difference between the actual value of the property and what the property would have been if it had been as represented." As such, the allegations in her complaint that she suffered damages because the products she purchased were worth less than the products she thought she had purchased had Quaker's "No Artificial Preservatives" representation been true, establish an ascertainable loss.

In response to Defendants' argument that Plaintiff does not or cannot allege that the Products at issue cost more than the comparable product which also contains tocopherols but does not carry the challenged label statement, Plaintiff contends that such allegations are not necessary under the benefit of the bargain rule. Plaintiff argues that

she need only allege that the actual value of the product purchased was less than the value of the product as represented to state a claim for ascertainable loss.

Plaintiff also argues that she has standing to bring claims regarding products she did not purchase because the appropriate inquiry for determining if Plaintiff has standing as to products that she did not personally purchase is whether there is sufficient similarity between the products purchased and not purchased, and here there is sufficient similarity because the misrepresentations on each of the Products at issue, including those Plaintiff did not purchase, are identical.

<u>Improper Defendant</u>

Lastly, Plaintiff contends that she has sufficiently alleged facts establishing that PepsiCo is a proper defendant.  Plaintiff asserts that Defendants' claim that PepsiCo is only mentioned once in the complaint is a misrepresentation and the complaint expressly states that references to "Defendants" throughout the complaint include PepsiCo.

Additional facts and arguments are recited below as relevant to particular issues.

## **<u>DISCUSSION</u>**

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).  But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Standing is a jurisdictional inquiry. As such, we must first determine whether this Court has jurisdiction to hear this matter before we address Defendants' other arguments.

## STANDING

In order to proceed with her claims, Plaintiff must have Article III standing. "The doctrine of standing limits the jurisdiction of federal courts to 'those disputes which are appropriately resolved through the judicial process.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted)). A federal court must inquire whether the plaintiff has properly presented a case or controversy under Article III. The "irreducible constitutional minimum of standing" requires a showing of "injury in fact" to the plaintiff that is "fairly traceable to the challenged action of the defendant," and "likely [to] be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (citations omitted).

In order to satisfy the "injury in fact" requirement, Plaintiff must plead facts showing that she suffered an injury that is "concrete, particularized, and actual or imminent." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quoting *Monsanto Co. v. Geertson Seed Farm*, 561 U.S. 139 (2010)). Whether a Plaintiff has shown an injury in fact "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). As such, "the question of whether [Plaintiff] has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant [Plaintiff] relief." *Braden*, 588 F.3d at 591 (citations omitted).

Plaintiffs can satisfy the injury in fact requirement for contract-related claims by alleging they did not receive the full benefit of their bargain. *Kuhns v. Scottrade, Inc.* 868 F.3d 711, 716 (8th Cir. 2017). Plaintiffs show an actual economic injury for the purposes of standing when they allege a difference between the amount paid and the value of the services or products received. *Id.*; *Carleson v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016).

More specifically, under the MMPA, Missouri follows the benefit of the bargain rule to determine whether Plaintiff suffered an ascertainable loss. *Murphy v. Stonewall Kitchen, LLC*, 503 S.W. 308, 313 (Mo. Ct. App. 2016). The benefit of the bargain rule "compares the actual value of the item if it had been as represented at the time of transaction." *Id.*

In *Kelly v. Cape Cod Potato Chip Co.* 81 F. Supp. 3d 754 (W.D. Mo. Jan. 27, 2015), the plaintiff alleged that she purchased chips which were represented to consumers as "natural" when they actually contained synthetic preservatives. *Id.* at 758. On this basis, plaintiff alleged that the chips were worth less than they represented to be. *Id.* The *Kelly* court held that "Plaintiff's Petition, alleging that the chips as purchased were worth less than as represented sufficiently states that she has suffered an ascertainable loss under the MMPA at this stage of the litigation" because "[p]laintiff need only allege that the actual value of the product purchased was less than the value of the product as represented to state a claim for ascertainable loss." *Id.* at 758-59.

Here, Plaintiff alleges that she bargained for and expected a product that contained "No Artificial Preservatives," that Defendants breached the implied contract when it

failed to sell her a product with no artificial preservatives, and that she suffered an actual injury in the diminished value of her bargain.  This injury resulted from Defendants' purportedly false or misleading labeling.  As such, Plaintiff has established a cognizable legal injury sufficient to bring her contract-related claims, including her claims under the MMPA.

Price Premium Theory

Defendants argue that Plaintiff has pled no facts to support her claim that she "paid a premium for the Products over comparable products that did not purport to contain 'No Artificial Preservatives.'"  Compl. ¶ 11.  Specifically, Defendants argue that Plaintiff does not allege that the Granola Chewy Bar S'mores variety with "No Artificial Preservatives" labeling costs more than the S'mores variety which does not carry the challenged label statement.

Defendants also assert that Plaintiff would be unable to make such a showing because the Granola Chewy Bars' S'mores *with* the "No Artificial Preservatives" label costs the same as the Granola Chewy Bars S'mores without the challenged label by citing to prices listed on the Walmart website.  Such a factual inquiry is improper at this stage. Defendants ask the Court to take judicial notice of the pricing information because it is "necessarily embraced by" the Complaint.  However, the information provided only includes current pricing information, it does not include historical data on the prices of the Products, nor does it show the actual price paid by Plaintiff.  As such, the Court declines to take judicial notice of the provided pricing information at this time.

"Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for ascertainable loss." *Kelly*, 81 F. Supp. 3d at 758-59.  Whether Plaintiff can prove the amount of her damages is a matter to be determined on summary judgment or at trial, not on a motion to dismiss. Plaintiff has properly alleged that she suffered an injury in fact.

<u>Substantially Similar Products</u>

Next, Defendants contend that Plaintiff's claims must be limited to the single Product Plaintiff alleges she purchased, Quaker Chewy Granola Bars, 3 Flavor Variety Pack – Chocolate Chip, Peanut Butter Chocolate Chip, Dark Chocolate Chip, because Plaintiff must demonstrate that she has "such a personal stake…as to warrant [her] invocation of federal court jurisdiction" to establish Article III standing.  *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

District Courts are split on whether named plaintiffs may assert claims related to products they did not purchase, and neither the Missouri Supreme Court nor the Eighth Circuit have addressed this exact issue.  *See Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 667 (E.D. Mo. 2020) (holding that that "plaintiffs have standing to assert claims on behalf of a class as to products they have not purchased as long as 'the products and alleged misrepresentations are substantially similar'") (citations omitted); *but see Kelly*, 81 F. Supp. at 763 (plaintiff lacks standing to assert claims regarding varieties of chips she did not purchase because plaintiff "was neither personally nor actually harmed as to those twelve varieties.")

- 13 -

This Court finds the reasoning in *Goldman* persuasive and agrees that the "substantially similar" inquiry is most compatible with the Supreme Court holdings in *Gratz v. Bollinger*, 539 U.S. 244 (2003) and *Lewis v. Casey*, 518 U.S. 343, 358 (1996). *See In re Vizio, Inc. v. Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1218-19 (C.D. Cal. 2017) (analyzing the three approaches taken by district courts regarding how related the product purchases by the named plaintiff and putative class members must be and concluding the "substantially similar" inquiry is the most consistent with Supreme Court precedent.)

Here, the Products and the alleged misrepresentations are substantially similar, as they are all Quaker Granola bar products which contain tocopherols and contain the label "No Artificial Preservatives."  For the purposes of standing, the Court finds that Plaintiff's claims need not be limited to only the products she purchased.  Inasmuch as the Plaintiff has standing, the Court need not engage in a separate analysis to determine whether Plaintiff adequately represents the interests of the putative class at this time for that determination is reserved for the class certification stage.

## FAILURE TO STATE A CLAIM

### False Labeling

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Defendants

contend that Plaintiff has failed to plead any facts in support of her contention that the tocopherols in the Products actually are artificial, a fact which is necessary to all of her causes of actions.

To state a claim under the MMPA, Mo. Rev. Stat. § 407.020 et seq., a plaintiff must show that (1) she purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss; (4) as a result of an act declared unlawful under the statute.[2]  Mo. Rev. Stat. § 407.025(1); *Tucker v. General Motors LLC,* No. 21-2698,  2023 WL 310225, at *2 (8th Cir. Jan. 19, 2023); *Thornton v. Pinnacle Foods Group*, LLC, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *2 (E.D. Mo. Aug. 01, 2016).  Under the MMPA, "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…is declared to be an unlawful practice."  Mo. Rev. Stat. § 407.020.1.  The "falsity" or "misrepresentation" element is also required in Plaintiff's other claims.[3]

---

[2]      Plaintiff has satisfied the first three elements of her MMPA claims.  There is no dispute that Plaintiff has plausibly alleged that she purchased merchandise from the defendant for personal, family, or household purposes.  As discussed *supra* Plaintiff has also plausibly alleged that she suffered an ascertainable loss, namely that the actual value of the product as purchased was less than the value of the product as represented.  As such, the only remaining element in contention is whether Plaintiff has properly alleged that Defendants engaged in an unlawful practice (false labeling).

[3]      *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 122 (Mo. 2010) (breach of warranty requires showing that product "did not conform to [the seller's] statement of fact"); *id.* at 134 (negligent misrepresentation requires showing that information supplied is false); *Velder v. Cornerstone Nat'l Ins. Co.*, 243 S.W.3d 512, 517

Defendants argue that Plaintiff has not plausibly alleged that the tocopherols in the Products are artificial.  However, Plaintiff has specifically alleged that the tocopherols in the Products are artificial: "[t]ocopherols do as a matter of fact function as artificial preservatives in the Products."  Compl. at ¶ 36.  Plaintiff supports this fact with citations to the Food and Drug Administration (FDA's) definitions, classifications, regulatory listings, and warning letter regarding tocopherols.  *See* Compl. ¶¶ 28-35.  Additionally, Defendants admit that tocopherols exist in both artificial and non-artificial forms.  Doc. No. 13 at 7.  Furthermore, while Defendants contend that the tocopherols in the Products are the non-artificial version, discovery has yet to commence, and Defendant has offered no proof that the tocopherols in the Products are non-artificial beyond its own assertion.

In *Thornton*, the court denied defendant's motion to dismiss MMPA claims where the plaintiff alleged that they purchased a food mix that was labeled "Nothing Artificial" but in fact contained two synthetic substances.  *Id.* at *1.  The court stated it found "no basis" to disregard the plaintiff's allegations that the specific compounds were artificial, and that defendant's arguments about the meaning of the word "artificial" did not warrant dismissal.  *Id.* at *3.

Similarly here, Plaintiff alleges that Defendants' Products were labeled "No Artificial Preservatives," but in fact contain the artificial and chemical preservative tocopherol.  Moving beyond mere speculation, Plaintiff's complaint cites information

---

(Mo. Ct. App. W.D. 2008) (same for fraud); *Exec. Bd. of Mo. Baptist Convention v. Windemere Baptist Conference Ctr.*, 208 S.W.3d 678, 697 (Mo. Ct. App. W.D. 2009) (unjust enrichment requires showing it would be unjust to allow defendant to retain benefit).

about the use, purpose, and makeup of tocopherol, in addition to regulations promulgated

by the U.S. Food and Drug Administration.  Compl. ¶¶ 28-35.  Accepting these

allegations as true for the purposes of the motion and viewing them in light most

favorable to the Plaintiff, Plaintiff has pled sufficient facts to assert that the Products

contain artificial ingredients.

The Court acknowledges that Defendant may very well prove that the tocopherols

in the Products are of the non-artificial variety, and therefore its labeling is not false, but

such argument is properly resolved on summary judgment or at trial, not in a motion to

dismiss.

<u>Website and Marketing Misrepresentations</u>

Next, Defendants argue that to the extent Plaintiff's claims are based on alleged

"No Artificial Preservatives" statements on Quaker's website or in Defendants'

marketing materials, Plaintiff fails to satisfy Rule 9(b)'s requirement to identify with

particularity "the time, place and contents" of the alleged misrepresentations.

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In

order to properly allege fraud with sufficient particularity, a plaintiff must state the "who,

what, where, when, and how" of the alleged fraud.  *BJC Health Sys. v. Columbia Cas.

Co.,* 478 F.3d 908, 917 (8th Cir. 2007).  "A plaintiff need not state each element of the

fraud claim with particularity to satisfy this requirement; rather, a plaintiff 'must state

enough so that his/her pleadings are not merely conclusory.'"  *Thornton*, 2016 WL

4073713 at *4 (quoting *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997)).

Plaintiff's fraud claims with respect to the statements on Quaker's website and marketing materials are not pled with sufficient particularity to satisfy the Rule 9(b) requirements.  Plaintiff does adequately allege (i) the who: Quaker and PepsiCo (Compl. at ¶ 43); (ii) the what: labeling the Products as containing "No Artificial Preservatives" when they contain artificial tocopherols (Compl. at ¶ ¶ 46-47); (iii) the when: purchases made during the class period (*see* Compl. at ¶ 12) (iv) and the how: by representing that the Products contain "No Artificial Preservatives' when in fact it contains artificial tocopherols (Compl. at ¶¶ 46-47), but Plaintiff does not adequately allege the "where." Plaintiff simply states that "Defendants' marketing materials are replete with statements that the Products contain "No Artificial Preservatives" (Compl. at ¶ 21) and "Quaker's website contains numerous statements claiming that the Products contain 'no artificial preservatives.'"  Compl. at ¶ 22.

Plaintiff does not identify which marketing materials contain the allegedly false statement, nor does Plaintiff identify the website address containing the false statements or when she viewed said website.  *See In re Express Scripts, Inc. v. Pharm. Benefits Mgmt. Litig.,* No. MDL 1672, 2007 WL 1796224, at *13 (E.D. Mo. June 20, 2017) (dismissing negligent misrepresentation claim where plaintiff failed to identify "which marketing materials contain the alleged misrepresentation," explaining that "there is nothing in the Complaint that identifies the source of misrepresentations such that [defendant] may properly prepare its case."); *see Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174-75 (C.D. Cal. 2014), *aff'd,* 649 F. App'x 424 (9th Cir. 2016) (finding that plaintiff's website allegations did not satisfy Rule 9(b) because plaintiff did

not specify when he viewed the website or when he relied on it in deciding to purchase the products); *see Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013) ("Plaintiffs' position appears to be that the presence of the term "100% Natural" on the physical product labels is sufficient to support all of their claims, no matter how vaguely articulated.  However, they have not addressed the fact that the [complaint] fails to identify with particularity (or at all) any misrepresentations made in the online sources."); *cf. Pearlstone v. Wal-Mart Stores, Inc.*, No. 4:17CV2856 HEA, 2018 WL 11384521, at *8 (E.D. Mo. Nov. 16, 2018) (Rule 9(b) satisfied when the "where" included copies of the misleading statements on Defendant's return policy and website attached to the complaint); *Vitello v. Natrol, LLC*, No. 4:18 CV 915 RWS, 2018 WL 6304900, at *2 (E.D. Mo. Dec. 03, 2018) (Rule 9(b) satisfied when the "where" included a linked website).

Plaintiff's vague allegations of the false statements on the website and in the marketing materials does not sufficiently identify the source of the misrepresentations such that Defendants may properly prepare their case.  As such, with respect to the claims related to the alleged false statements on the website and in the marketing materials, Defendants' motion to dismiss will be granted.[4]

---

[4]     These claims will be dismissed without prejudice.  Plaintiff may seek to amend her complaint to plead the allegations of fraud with respect to the website and marketing materials with the requisite degree of particularity.

<u>MMPA Omission-Based Claims</u>

Next, Defendants contend that Plaintiff's omission-based MMPA claims also fail because she has not pleaded the requisite scienter with particularity.  Generally, the MMPA "supplements the definition of common law fraud, eliminating the need to prove intent to defraud or reliance." *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006).  As such, there is no scienter requirement for misrepresentation claims under the MMPA.  *See State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. Ct. App. 1988) ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred.")

However, a claim for omission of a material fact under the MMPA does have a scienter requirement.  "A plaintiff must show the defendant failed to disclose material facts that were 'known to him/her, or upon reasonable inquiry would [have been] known to him/her.'" *Budach v. NIBCO.,* No. 2:14-CV-04324, 2015 WL 3853298, at *8 (W.D. Mo. June 22, 2015) (citing *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 n.4 (Mo. Ct. App. 2009)); 15 C.S.R. § 60-9.110.3.

Defendants, relying on *Budach* and *Freeman v. Toyota Motor Sales, USA, Inc.*, No. 4:19-cv-02550-SEP, 2020 WL 7041810 (E.D. Mo. Nov. 30, 2020), argue that Plaintiff must allege with particularity facts supporting a plausible inference that Defendants were aware that the Products contained artificial tocopherols, including when

and how Defendants became aware of this, yet failed to disclose that information.[5]

Plaintiff alleges the following:

- "Defendants' representations are further false, misleading, and deceptive because they do not represent that all of their Quaker Chewy Granola Bars with the preservative ingredient tocopherols contain 'No Artificial Preservatives.'"  Compl. at ¶ 43.  "The packaging of certain flavors of Quaker Chewy Granola Bars that are not included in Plaintiff's claims include the ingredient tocopherols yet do not misrepresent that they contain 'No Artificial Preservatives.'"  *Id.* (image omitted).

- "And Defendants admit on the labels of their Quaker Chewy Granola Bars S'Mores that the tocopherols are an ingredient used 'to preserve freshness' in the product."  *Id.* at ¶ 44 (image omitted).

- "Thus, Defendants do not misrepresent that all of their Quaker Chewy Granola Bars with the preservative ingredient tocopherols contain 'No Artificial Preservatives.'"  *Id*. at ¶ 45.

- "Given that Defendants label the Quaker Products as containing 'No Artificial Preservatives' with the preservative tocopherols while not making the exact same representation on other Quaker Chewy Granola Bar flavors confirms that the tocopherols ingredient in the Products at issue are artificial, chemical, and/or synthetic preservatives."  *Id.* at ¶ 46.  "And it further confirms that Defendants' representations that the Quaker Products contain "No Artificial Preservatives" are false, deceptive, and misleading."  *Id*.

- "Defendant is thus aware that the tocopherols in its Products are artificial, chemical, and/or synthetic preservatives but chooses to misrepresent as much on the packaging of the Products."  *Id*. at ¶ 47.

At this stage, these statements are sufficient to allege Defendants had notice of the

alleged omission.  Requiring Plaintiff to plead with particularity which agent(s) of

Defendants omitted the material information and precisely when and where the omission

---

[5]     Defendants again revive their argument that Plaintiff has not plausibly alleged that the tocopherols in the Products are in fact artificial. The Court has already rejected this argument, as such, it will not be considered here.

occurred is not required.  "Such a draconian reading of Rule 9 would read the words

'concealment, suppression, or omission' right out of the MMPA by making it impossible

to take such a claim beyond the pleading stage."  *Owen v. Gen. Motors Corp.*, No. 06-

4067 CV CNKL, 2006 WL 2808632, at *8 (W.D. Mo. Sept. 28, 2006) (denying motion

to dismiss because it was clear from the complaint precisely what information the

plaintiffs alleged defendant had omitted and/or concealed).

     In rebuttal, Defendants argue that "it is not plausible or even conceivable to infer

from the labeling of the entirely different S'mores variety…that Quaker knew these other

Products contain artificial tocopherols and deliberately chose to mislabel *them*, but

properly labeled the S'more variety."  Doc. No. 20 at 8 (emphasis theirs).  The Court is

not persuaded by this argument.  Plaintiff's complaint precisely sets forth what

information it alleges was concealed by Defendants and how Defendants knew or should

have known the Products were mislabeled.  At this stage, the Court cannot say that the

claim is so implausible as to warrant dismissal.  *See Twombly*, 550 U.S. at 570.

     Because Plaintiff has placed Defendants on notice of the particular material

omission underlying her claim, Counts III and IV will not be dismissed.

<u>Breach of Implied Warranty of Merchantability</u>

     Next, Defendants argue that Plaintiff's claim for breach of the implied warranty of

merchantability fails because Plaintiff does not allege the Products were not "fit for the

ordinary purpose for which such goods are used," as required by Missouri law.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130 (Mo. 2010)

(quoting Mo. Ann. Stat. § 400.2-314.2(c)).  Specifically, Defendants contend that since

the Products are "food items," Plaintiff must allege that the Products are unfit for "consumption by humans" in order to state a claim, which Plaintiff has failed to do.  *See Parker v. Wal-Mart Stores, Inc.*, 367 F. Supp. 3d 979, 985 (E.D. Mo. 2019).  In response, Plaintiff argues that her claim for breach of implied warranty of merchantability is predicated on Mo. Ann. Stat. § 400.2-314(2)(f), which states that merchantable goods must "conform to the promises or affirmations of fact made on the container or label if any."

The Missouri District Courts appear to disagree about whether the mislabeling of food products constitutes an implied breach of merchantability.  Plaintiff relies on a case from the Western District of Missouri, *Grantham v. Wal-Mart Stores, Inc.*, No. 08-3466-CV-S-GAF, 2012 WL 12898186 (W.D. Mo. Feb. 28, 2012), which states that a "plaintiff can prove [defendant] breached the implied warranty of merchantability by showing the [product]: (a) was not fit for the ordinary purposes for which it is used; (b) was not adequately contained, packaged, or labeled; or (c) did not conform to the promises or affirmations of fact made on the container or label."  *Id.* at *3.  Arguably, *Grantham* is distinguishable because the product at issue was not a food product, but a more recent case out of the Western District of Missouri, *Browning v. Anheuser-Busch, LLC*, 539 F.Supp.3d 965 (W.D. Mo. 2021), extends *Grantham's* reasoning to mislabeled food products.  *Id*. at 975 ("The Court finds the alleged packaging and advertisements plausibly constitute a promise or affirmation of fact that the [products] contain[] liquor or wine, which they do not.  In turn, [p]laintiffs have adequately stated a claim for breach of implied warranty.").

- 23 -

Defendants rely on two cases from the Eastern District of Missouri which hold that in order to state a claim for implied breach of merchantability for a food product, the plaintiff must assert that it is not fit for its ordinary purpose – human consumption. *See Parker*, 367 F. Supp. 3d at 985 (dismissing breach of implied warranty of merchantability claim because plaintiff failed to allege that the products were unfit for human consumption); *Penrose v. Buffalo Trace Distillery, Inc.*, No. 4:17CV294 HEA, 2018 WL 705054, at *6 (E.D. Mo. Feb. 5, 2018) (dismissing breach of implied warranty of merchantability claim because "[t]he products at issue are food products, and [p]laintiff's allegations give no reason to believe that the products were unfit for their ordinary purpose: consumption as food by humans.").

Implied warranty of merchantability is defined under Missouri Rev. Statute § 400.2-314 as:

> (1) Unless excluded or modified (section 400.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

> (2) Goods to be merchantable must be at least such as

> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Mo. Ann. Stat. § 400.2-314.

Upon a close reading of the statute, in order for a good to be merchantable it must be "fit for the ordinary purposes for which such goods are used" (§ 400.2-314(2)(c)) *and* "conform to the promises or affirmations of fact made on the container or label if any." § 400.2-314(2)(f).

The Uniform Commercial Code comment on this statute sheds additional light onto the labeling requirement:

> Paragraph (e) applies only where the nature of the goods and of the transaction require a certain type of container, package or label.  Paragraph (f) applies, on the other hand, wherever there is a label or container on which representations are made, even though the original contract, either by express terms or usage of trade, may not have required either the labelling or the representation.  This follows from the general obligation of good faith which requires that a buyer should not be placed in the position of reselling or using goods delivered under false representations appearing on the package or container.  No problem of extra consideration arises in this connection since, under this Article, an obligation is imposed by the original contract not to deliver mislabeled articles, and the obligation is imposed where mercantile good faith so requires and without reference to the doctrine of consideration.

Mo. Ann. Stat. § 400.2-314 (Uniform Commercial Code Comment No. 10).

The Court agrees with the statutory interpretations in *Grantham* and *Browning*; Plaintiff can prove a breach of implied warranty of merchantability by showing that the product is (a) not fit for the ordinary purposes for which it is used *or* (b) did not conform to the promises or affirmations of fact made on the container or label.  Here, Plaintiff has alleged that the product did not conform to the promises or affirmations of fact ("No

Artificial Preservatives") made on the container or label, and as such has properly stated a claim for the breach of implied warranty of merchantability under Missouri law.

**PLAINTIFF'S CLAIMS AGAINST PEPSICO**

Lastly, Defendants argue that all claims against PepsiCo should be dismissed because Plaintiff has alleged no facts establishing that PepsiCo is a proper defendant and the mere fact that PepsiCo is Quaker's parent company does not make it liable for any alleged mislabeling.  Defendants assert that PepsiCo is only mentioned once in the complaint.  In response, Plaintiff states that PepsiCo is incorporated by reference throughout the entire complaint when it refers to "Defendants".

The Court agrees that a parent company is not liable for the alleged mislabeling of its subsidiary by the mere fact it is the parent company.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation…is not liable for the acts of its subsidiaries.'") (citation omitted).

Defendants rely on a case from the Northern District of California which dismissed claims against PepsiCo, as the parent company, because the plaintiffs "never explain[ed] exactly how PepsiCo, as Frito-Lay's parent company, is liable for Frito-Lay's activity." *Wilson v. Frito-Lay North America, Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *3-4 (N.D. Cal. 2013).  The Court disagrees that such a showing is required at the pleading stage.  Additionally, Plaintiff has not alleged that PepsiCo is liable for Quakers mislabeling on the mere fact that it is Quaker's parent company.  In the introduction to her complaint, Plaintiff expressly states, "Plaintiff…brings this action against Defendant

- 26 -

PepsiCo, Inc. and The Quaker Oats Company (herein after referred to as 'Defendants' or 'Quaker')…"  Thereafter, Plaintiff refers to the "Defendants" in the allegations throughout her complaint.  Through this incorporation, she has alleged that PepsiCo is directly and jointly liable for the false and misleading labeling.

It may very well be that Plaintiff will be unable to prove that PepsiCo is liable for the alleged mislabeling, for it will be her burden to prove.  However, such liability is properly determined at summary judgment or trial.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.  Doc. No. 12.  Plaintiff's claims with respect to misrepresentations on Defendants' website or in their marketing materials are **dismissed without prejudice**.  Defendants' motion to dismiss is otherwise **denied**.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of January, 2023.